# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

DAVID SMITH, )
        Plaintiff, )
      )    Case No.:
     vs. )
      )    **JURY TRIAL**
BROWN UNIVERSITY, )    **DEMANDED**
        Defendant. )
_____ )

## <u>VERIFIED COMPLAINT</u>

1.    This is a narrow complaint solely addressing Defendant Brown University's decision to suspend a student, Plaintiff David Smith,[1] on an interim basis, prior to conducting any investigation, based solely on unsupportable, untrue *accusations* of sexual misconduct by a female student. Brown did so despite possessing objective evidence, including photographs, refuting and disproving the accusations. Because the underlying disciplinary investigation is ongoing, there has not been any determination that David Smith is responsible for any violation of Brown's student policies, and David Smith seeks only to remain a student and to continue his valuable academic and athletic training pending a final resolution, consistent with the presumption of innocence that Brown's policies promise its students. David Smith's egregious and gratuitous interim suspension has already caused irreparable harm that will vastly expand until this Court orders Brown to lift it.

---

[1]   Plaintiff David Smith files herewith a motion for leave to proceed in this action using pseudonyms. The names "Jane Roe" and "James Doe," as used herein, are also pseudonyms.

## PARTIES AND RELEVANT PERSONS

2.     Plaintiff David Smith ("David Smith") is a natural person who is domiciled in and a citizen of a State that is not Rhode Island. He is a Brown student, a member of a Brown varsity sports team, and the accused respondent in the pending sexual misconduct proceeding.

3.     Defendant Brown University ("Brown") is a non-profit corporation organized under the laws of the State of Rhode Island operating as a private university in Providence, Rhode Island.

4.     Jane Roe is a non-party to this action. She is David Smith's accuser and the complainant in the pending administrative sexual misconduct proceeding.

## JURISDICTION AND VENUE

5.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1331, as David Smith and Brown are citizens of different states and the amount in controversy exceeds $75,000.

6.     This Court has personal jurisdiction over Brown on the grounds that it is a citizen of Rhode Island and conducts business within the District of Rhode Island.

7.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

A.     Factual Summary

8.     In the winter of 2018, Brown offered David Smith admission into the Class of 2023 based on, among other things, his outstanding academic record and athletic talents. David Smith accepted Brown's offer, paid tuition, and enrolled in Brown in the fall of 2019 with the overarching goal of obtaining a world-class education to prepare him for a meaningful career, in addition to

further developing his athletic talents and making connections with professors, mentors, and peers who would form his lifelong network.

9.     David Smith's first two-and-a-half years at Brown were enriching and productive for both David Smith and Brown. He earned an overall 3.93 GPA while becoming a respected member of Brown's academic and social community. He became an extraordinarily accomplished member of a Brown varsity sports team. He also serves in a leadership position for a university club.

10.     On November 12, 2021, Jane Roe, a female student at Brown, filed a sexual misconduct complaint against David Smith that on its face described a physically violent sexual encounter with David Smith that allegedly occurred at approximately 12:30 a.m. on October 30, 2021, and that allegedly resulted in injuries to her. Within a few days, David Smith responded to the complaint with a factually-specific and detailed denial of every accusation of nonconsensual sexual activity within the complaint, and he submitted photographs of Jane Roe—some of which were taken less than 24 hours after the alleged incident, and some of which were taken less than 48 hours after the alleged incident—showing that she had none of the injuries that she alleged.

11.     But Brown did not bother to wait for David's response to the complaint before taking action against him. Rather, Brown informed David Smith of the complaint on November 16, 2021. On November 18, 2021, before David was obligated to or could file his response to the complaint, Brown banned him from campus and suspended him until the allegations against him were resolved, without any indication as to when that may be. Brown's actions immediately barred him from participating in any Brown activities or classes, including taking his end-of-semester exams that were quickly approaching. Only after David Smith filed multiple petitions for limited relief from these conditions did Brown allow him to complete the semester remotely and to take

one exam on campus. However, even after Brown allowed him to submit a response to Jane Roe's sexual misconduct accusations and had possession of his very credible and factually accurate evidence refuting those accusations, Brown refused to reconsider the interim suspension, which resumed in full force on January 7, 2022. This resulted in a full ban from campus for any purpose including taking classes or participating in his sport.

12.     Brown's heavy-handed and unjustifiable response to that complaint threatens to upend David Smith's prospects for a promising academic and athletic career at Brown, as well as his prospects for a promising life and career after college. The resumption of the interim suspension on January 7, 2022, threatens to irreparably harm David Smith in multiple ways. His Spring 2022 classes are scheduled to begin on January 26, 2022, and his athletic training and practices are also scheduled to begin at the start of the Spring 2022 semester. By all indications, David Smith has been suspended and will continue to be suspended and barred from participating in either of these activities, because the formal resolution of Jane Roe's complaint against him will not be complete by then.

13.     Brown is entirely without basis or cause to suspend David Smith during the pendency of the investigation and adjudication of Jane Roe's complaint. Pursuant to Brown's student policies and procedures, David Smith is entitled to a presumption of innocence throughout the complaint resolution process, and Brown is prohibited from removing him from campus unless it identifies "reasonable cause" to believe that he will continue to engage in prohibited conduct or poses a "significant threat of harm" to the university community. Brown's actions are entirely without cause, much less "reasonable cause." Even Brown's own Threat Assessment Team report did not identify evidence disputing this other than the unsupported Formal Complaint.

14.     The following allegations further describe these events.

B.      The Evening of October 29–30, 2021

15.     On the evening of October 29, 2021, David Smith and his housemates held a Halloween party at their shared residence very close to the perimeter of Brown's campus.

16.     Jane Roe attended that party with several friends.

17.     David Smith and Jane Roe had not previously met.

18.     Both David Smith and Jane Roe consumed some alcohol at the party.

19.     David Smith was not intoxicated or "drunk" at any point in the evening. In fact, within one hour of the time that Jane Roe alleged that she was assaulted on October 30, 2021 (12:30 a.m.), officers from Brown's Department of Public Safety (hereinafter "Brown University Police") showed up to David Smith's residence to respond to a noise complaint from neighbors. As the person who arranged for security (bouncers) that night, David Smith met with the officers and addressed their concerns about the noise, and the reporting officer specifically noted that David Smith was "extremely cooperative and understanding of the complaint." The officer's report made no notation to the effect that David Smith was intoxicated, aggressive, or belligerent.

20.     Jane Roe did not appear to David Smith to be intoxicated or "drunk" to the point of being incapacitated or unable to make informed, rational judgments at any point in the evening, and Jane Roe confirmed in her Formal Complaint that she was not incapacitated and was "aware of [her] surroundings."

21.     At the party, David Smith and Jane Roe met for the first time and struck up conversation.

22.     David Smith expressly asked Jane Roe if she wanted to kiss him, and she said yes. David Smith and Jane Roe kissed in the crowded party.

23.     As the party progressed, David Smith and Jane Roe decided to leave the party and to go upstairs to David Smith's bedroom. Jane Roe followed David Smith up two flights of winding stairs, in the middle of the house, to his third-floor bedroom.

24.     In David Smith's bedroom, David Smith and Jane Roe began kissing and touching each other.

25.     David Smith and Jane Roe had consensual sexual intercourse, three times, during the evening of October 29–30, 2021. The lights remained on in the bedroom during the entire encounter, and the two could clearly see each other the entire time.

26.     When David Smith and Jane Roe had sexual intercourse the first time, the condom that David Smith was wearing broke. David Smith panicked at the broken condom and immediately told Jane Roe that he was concerned about pregnancy. Jane Roe responded and assured David Smith that there was nothing to worry about because she had an intrauterine ("IUD") device to prevent pregnancy. David Smith then asked her if she had any venereal diseases that he should be concerned about, and Jane Roe responded and assured him that she was disease free.

27.     After the condom broke, David Smith walked to his bathroom, disposed of it, and went to the bathroom. When he returned, Jane Roe was lying naked in his bed waiting for his return. The two resumed kissing and touching, and had sexual intercourse a second time.

28.     David Smith and Jane Roe had sexual intercourse a third time during the evening of October 29–30, 2021. When Jane Roe, while having intercourse with David Smith, suggested that they go downstairs to return to the party, they immediately ceased having intercourse. David Smith was exhausted from the sexual activities that had occurred up to that point, and he declined Jane Roe's request to return to the party together, and he stayed in his room. After some time, he later returned to the party.

29.     After the third round of sexual intercourse ended, Jane Roe went to the bathroom, dressed, and went back downstairs to the party.

30.     Jane Roe was an active, enthusiastic, and exuberant participant in each sexual act that she engaged in with David Smith in the evening of October 29–30, 2021. She actively encouraged David Smith to have sex with her by, for example, encouraging him with active and intense "dirty talk" such as, "fuck me," "fuck me harder," and "fuck me you fuck." David Smith attempted to match Jane Roe's level of intensity during sexual intercourse. Jane Roe gave clear and unmistakable verbal and physical signs of encouragement for each sexual act that she engaged in with David Smith.

31.     When Jane Roe left the bedroom, David Smith did not believe, and had absolutely no reason to believe, that Jane Roe was anything other than a willing, desirous participant.

C.     Jane Roe's Alleged Account of the Evening of October 29–30, 2021

32.     On November 12, 2021, Jane Roe filed a Formal Complaint with Brown claiming that David Smith sexually assaulted her at approximately 12:30 a.m. on October 30, 2021. Her Formal Complaint is a one-and-one-quarter-page unsupported narrative that paints a wildly different, and wholly unbelievable and untrue, account of her interactions with David Smith.

33.     She claimed that David Smith approached her at the party and asked to kiss her, and that she "said yes" because "it would have been awkward to say no."

34.     She claimed that David Smith kissed her but pushed her away saying that was all she "got for now." She claimed that David Smith later "dragged" her through the crowded party full of his and her friends into "a corner to kiss [her] again." (In reality, Jane Roe willingly came across the room to David Smith of her own volition after David Smith made eye contact with her from across the room and motioned with his fingers for her to join him in a corner.)

35.     She claimed that David Smith asked if she ever had sex with James Doe—a male Brown student and David Smith's friend and teammate, with whom, unbeknownst to David Smith, Jane Roe had also recently had sexual intercourse. (In reality, David Smith merely asked her if she was interested in James Doe.)

36.     She claimed that she responded by asking David Smith, "What?," at which David Smith "spat in [her] face" in the middle of the crowded party and "walked away." She unbelievably claimed that she did not "think anything of it," despite the ludicrous claim that she had just been spat upon.

37.     She claimed that David Smith later "pulled [her] by the hand" up two winding flights of stairs located in the middle of the house during the crowded party "to his room" on the third floor.

38.     She claimed that David Smith threw her on his bed, and started kissing her neck "really hard." She said that she told him "not to leave marks." (David Smith does not recall Jane Roe instructing him "not to leave marks." Regardless, those words, if uttered, were a verbal indication of consent.)

39.     She claimed that David Smith told her to take off her clothes and that she "didn't know how to say no so [she] took them off."

40.     She claimed that David Smith took time to put on a condom and then penetrated her. She claimed that the sex "hurt really bad."

41.     She claimed that, during sex, David Smith "choked" her so hard that she could not breathe and "almost passed out," spat in her face and called her a "slut," and "pulled [her] hair until chunks of it fell out."

42.     She claimed that, after the first condom broke, she "thought [she] could finally leave." However, she claimed that, when David Smith put on a second condom and penetrated her again, she "just let him continue because [she] didn't want to say no."

43.     She claimed that at one point "[she] got up to go to the bathroom" but David Smith "pushed [her] down on the bed again and penetrated [her] for a third time."

44.     She claimed, for the first time in her complaint, that at one point "[she] was quiet," clearly indicating that she had not been quiet in her participation up to that point. She never acknowledges in her complaint what exactly she was verbalizing prior to becoming quiet.

45.     She claimed that David Smith noticed her quietness and responded to her change in demeanor. She claimed that she attempted to push David Smith off of her, said that "[she] had to go downstairs," and that David Smith "stood up."

46.     She claimed that, as she was attempting to leave," David Smith met her "by the door" and unsuccessfully attempted to force her to perform oral sex on him. (In reality, no interaction occurred by the door and there was no oral sex, attempted or otherwise, at any point in their interaction.)

47.     She claimed that she went to the bathroom and saw "mascara running down [her] face, bruises on [her] neck and cheeks, and [that her] hair [was] completely tangled." She claimed that her choker necklace had been ripped off and that two of her earrings were missing. She claimed that her ear piercings "were loose and bleeding" from the incident. She claimed that she had "bruises on [her] collarbone, left cheekbone, right cheekbone, left side of [her] neck, and right butt cheek."

48.     She claimed that it was only after she spoke to two friends and left the party that she suddenly "realized that [she] had never consented to having sex with [David Smith]."

49.     This alleged late realization regarding her consent came only *after* she in her own words admittedly agreed to let David Smith kiss her, told him "not to leave marks" while kissing her, voluntarily took off her own clothes, "didn't want to say no" while having intercourse, and volunteered that she had an IUD to reassure David that they were safe and could continue. To an objective observer, everything she said and did screamed of consent. The words and actions that she used during their encounter communicated her preferences to David Smith and indicated her ability to direct his behavior.

D.     Post-Incident Text Exchanges

50.     On October 30, 2021, at 9:16 a.m. of the morning after the party, David Smith called his friend and teammate, James Doe. David Smith told James Doe that he (Smith) had been together with Jane Roe and asked him (Doe) for her phone number. David Smith did not provide James Doe with any details regarding his (Smith's) and Jane Roe's sexual activities, beyond merely stating that they had been together.

51.     James Doe became very angry upon learning that David Smith and Jane Roe had been together and refused to give David Smith her number. James Doe abruptly ended the call after approximately two minutes. At 9:22 a.m., David Smith attempted to call James Doe back, but James Doe would not answer his calls.

52.     Immediately after speaking to David Smith, on October 30, 2021, at 9:22 a.m., James Doe texted Jane Roe: "Why did you get with my teammate?" Jane Roe responded, at 12:25 p.m.: "you don't know anything," "i didn't fucking want it."

53.     In her Formal Complaint, Jane Roe claimed that this October 30, 2021 text exchange with James Doe "put [her] under the impression that [David Smith] purposefully sought [her] out to have sex with [David Smith] because [David Smith] knew about [her] history with

[James Doe]." She claimed that, "[e]ven if that wasn't true, [David Smith] clearly bragged about having sex with me to [James Doe]."

54.     Upon belief, James Doe's angry text message caused Jane Roe to become embarrassed, as she believed that David Smith shared intimate details regarding her and David Smith's very vigorous sexual activities with James Doe, with whom she had a prior sexual history and for whom she had potential feelings. Jane Roe's potential feelings for James Doe and desire to keep her interactions with David Smith private from James Doe, her friends, or others likely explains why she claimed to have asked David Smith "to not leave marks" when he kissed her.

55.     Upon belief, it is the embarrassment that she could not cover up their encounter, and possible sense of regret and desire to appease James Doe, that led Jane Roe to file the incredible and untrue Formal Complaint with Brown.

E.     Jane Roe's Post-Incident Conduct

56.     Jane Roe's conduct after her sexual acts with David Smith on October 29–30, 2021, belies her accusations.

57.     In the days that immediately followed the party, Jane Roe posted photographs from the evening of the incident and other Halloween parties that she attended from that weekend on her social media sites.

58.     On October 30, 2021, approximately one hour after her text exchange with James Doe, in which she said "i didn't fucking want it," and approximately twelve hours after she claims that she was sexually assaulted, Jane Roe posted a picture of herself in the very distinctive costume that she wore to the party at David Smith's residence. The picture appears to be from earlier in the same night of the alleged incident.

59.    On October 31, November 1, and November 3, 2021, Jane Roe posted more pictures of herself in costumes showing that she attended a second and third Halloween party on separate nights over the course of that same weekend after she alleges being sexually assaulted.

60.    But none of these photos that Jane Roe posted from that weekend show any sign that she suffered physical or emotional trauma. Specifically, in the photos she is wearing revealing clothing that clearly shows her face, head, neck, shoulders, hair, and ears, but none of them show injuries whatsoever to those areas such as bruises, torn or pulled out hair, or bruised or bleeding ear piercings. Despite her claims of bloody ears in her Formal Complaint, Jane Roe can be seen wearing multiple earrings, including large earrings, in her ears in these photographs.

61.    Jane Roe's post-incident conduct also demonstrates awareness on her part that her social media postings directly contradicted her accusations within the Formal Complaint. On or shortly after November 23, 2021—the date on which David Smith filed his Response to the Formal Complaint, which attached copies of these photographs—Jane Roe *deleted* all of the photographs taken *after* the alleged incident that Halloween weekend, but not any that were taken *before* the alleged incident from her social media sites. There are no photographs remaining on those sites from the post-incident parties that weekend.[2]

62.    Additionally, Jane Roe's post-incident conduct shows that she has never considered David Smith or his presence around her to be a threat to her safety or well-being.

63.    On Friday, November 12, 2021—which was, unbeknownst to David Smith, the day that Jane Roe filed a complaint against him with Brown—Jane Roe came to David Smith's

---

[2]    Plaintiff David Smith has preserved these photographs, and they are available for review upon the Court's request.

residence, likely uninvited, to attend a small last-minute social gathering. She gave no indication that she felt threatened by David Smith or his presence around her.

64.     Jane Roe spent several hours at the last-minute gathering, and she approached David Smith and spoke to him and many of David Smith's friends, male and female, and told his friends of her intent to file a complaint against David Smith to get David Smith kicked out of Brown. She spent a significant amount of time at the last-minute gathering with James Doe.

65.     On Saturday, November 13, 2021, David Smith and Jane Roe encountered each other and spoke briefly at a Brown library. She did not tell him that she had filed a complaint against him with Brown.

66.     On Sunday, November 14, 2021, Jane Roe texted David Smith, and she asked him to meet with her in person. David Smith, again not knowing that she had filed a complaint against him, agreed but only if they met in a public place—the college green—after her threats from the preceding Friday night at his house.

67.     David Smith and Jane Roe met on the college green, and Jane Roe again gave no indications of feeling threatened by David Smith or his presence around her. In their conversation, David Smith attempted to clear the air between them and to understand why she told his friends that she intended to file a complaint against him and get him kicked out of Brown.

F.     Brown's Notice of Complaint

68.     On November 16, 2021, David Smith received a Private Message from Jeana Horton, Brown's Interim Title IX Program Officer, titled "Notice of formal complaint submitted to the Title IX and Gender Equity Office"(hereafter, "Notice of Complaint").

69.     The Notice of Complaint stated that Brown received a "Formal Complaint" from Jane Roe alleging that David Smith engaged in "Prohibited Conduct" in violation of the

"University's Sexual and Gender-Based Misconduct Policy" (hereafter, the "Non-Title IX Policy") (**Exhibit A**). The Notice of Complaint stated that the Formal Complaint would be resolved through processes described in Brown's "Sexual and Gender-Based Misconduct Complaint Procedure" (hereafter, the "Non-Title IX Procedure") (**Exhibit B**).

70.    The one-and-a-quarter-page Formal Complaint was attached. The Formal Complaint was dated November 12, 2021, nearly two weeks after the alleged incident occurred on October 29–30, 2021.

71.    The Notice of Complaint contained information summarizing the "participants' rights and guidelines related to the formal resolution process," which included the "[r]ight of Respondent to be presumed not responsible for the alleged prohibited conduct until a determination is made at the conclusion of the formal resolution process."

72.    The Notice of Complaint advised that David Smith's response to the Formal Complaint ("Response") was due within five business days, which was no later than 5:00 p.m. on Tuesday, November 23, 2021.

73.    David Smith filed his timely Response on November 23, 2021.

74.    The Response included five pages of David Smith's detailed and factually-accurate account of his interactions with Jane Roe on the evening of October 29–30, 2021. The Response noted Jane Roe's actions and strong erotic language that showed her unequivocal desire to participate in all aspects of their sexual activity of that evening. The Response also noted that Jane Roe's Formal Complaint contained several implausible allegations that lacked any credibility on their face, such as the fact that she claimed that he "spat in [her] face" in a crowded party surrounded by his and her friends, that she claimed that she "didn't think anything of [that]," and that she claimed that she continued to talk with him, continued to kiss him after that, came with

him up two flights of winding stairs to his third-floor bedroom after kissing him, voluntarily removed her own clothes, and reassured him that they were safe to continue sexual intercourse because she had an IUD.

75.     The Response also attached six pages of demonstrative evidence, including photographs of Jane Roe almost certainly taken the evenings of October 29, 30, 31, 2021. The photographs show Jane Roe leading an active and healthy social life without any of the signs of physical injury or emotional trauma that she alleged and described in the Formal Complaint.

G.     Brown's Immediate and Unjustifiable Interim Suspension

76.     The November 16, 2021, Notice of Complaint advised David Smith that a "No-Contact Order" had been issued between David Smith and Jane Roe, effective immediately. David Smith has willingly complied with the No-Contact Order in full and has not interacted with Jane Roe since he was made aware of it on November 18, 2021. (Although it is possible that Jane Roe knowingly violated corresponding no-contact restrictions imposed on her after the filing of her November 12, 2021 Formal Complaint, by, among other things, attending a social gathering at David Smith's residence and asking him to meet with her.)

77.     However, in addition to imposing the No-Contact Order, on November 18, 2021, Brown also informed David Smith that Brown's "Threat Assessment Team" had determined that he posed a "significant threat of harm to the health, safety, and welfare of others or the University community."

78.     By virtue of that determination, Brown issued an immediate "emergency removal" and "interim suspension" against David Smith.

79.     The emergency removal forced David Smith to leave campus immediately, and the interim suspension prohibited him from attending any classes or completing exams or assignments

until the end of the formal resolution process. In fact, David Smith received the notification of the emergency removal and interim suspension as he was walking into a classroom to take a quiz. After reading the notification, David Smith immediately turned around, left campus, and did not take that quiz. David Smith missed valuable in-person classes, group study sessions, and other educational opportunities as a result of the interim suspension.

80.     The interim suspension threatens to keep David Smith away from classes and extracurricular activities for a significant period of time which will exceed the start of the Spring 2022 semester, which begins on January 26, 2022. Brown's sexual misconduct policies state that the time for a formal resolution of a complaint "will take an average of 75 business days." Given that the Notice of Complaint was issued on November 16, 2021, it could be well into March 2022 before the formal resolution is complete.

81.     If the interim suspension lasts until the conclusion of the formal resolution process, David Smith will in all likelihood be forced to miss the entire Spring 2022 semester at Brown. It would be too late to enroll in classes, and he would be forced to sit out the entire athletic season. His transcript would forever reflect a glaring "gap" in his academic record for the Spring 2022 semester.

82.     On Friday, November 19, 2021, David Smith wrote to Vice President Eric Estes to appeal the interim suspension. David Smith noted that the interim suspension unfairly prejudiced him and threatened his academic and athletic career with Brown because, among other things, he had a paper due in one class the following Monday.

83.     On November 22, 2021, Vice President Estes held a virtual Zoom call with David Smith. David Smith stated his awareness that Brown apparently determined that he was a "threat," and he asked Vice President Estes to confirm that determination. Vice President Estes would not

answer that question. Instead, he simply asked David Smith to say what he wants say. Vice President Estes did not ask any questions or seem to take notes as David Smith shared how he was not a threat. The entire call lasted only ten to fifteen minutes, in which Brown provided no support for its decision to suspend David Smith.

84.     On November 23, 2021, Vice President Estes denied David Smith's appeal. However, Vice President Estes "adjust[ed] the interim measure temporarily by modifying the interim suspension to emergency interim removal from campus through the end of the fall semester and the submission of final grades. (January 6, 2022)." Under this modification, the "interim suspension will begin January 7, 2022 and will remain in effect pending the resolution of the Formal Complaint by the Title IX Office." Vice President Estes's message made clear that David Smith was "still not permitted to: (1) "access campus for any reason either academic or personal," although he could "hold meetings with staff in the Title IX Office, Student Support Services, Counseling and Psychological Services, and Health Services over phone or video conference"; (2) "attend in-person classes or any other academic activities, programs, or meetings"; (3) "attend co- or extra-curricular student programs and activities"; or (4) "represent [Brown] in any official capacity."

85.     Notably, when he denied the appeal, Vice President Estes had not yet even received David Smith's Response to the Formal Complaint, because David Smith had not yet turned it in, as the time he had to submit a response had not yet elapsed. Therefore, seventeen minutes after receiving Vice President Estes's denial, on November 23, 2021, David Smith sent Vice President Estes the Response and asked him to reconsider his decision based on his written Response and supporting attachments.

86.     David Smith did not hear back from Vice President Estes for another nine days.

87.     Rather than reconsider his decision, on December 2, 2021, Vice President Estes referred David Smith's submission of additional information back to Dean Bakkegard and the Threat Assessment Team to reconsider its determination that he posed a "significant threat" to Jane Roe and the campus community.

H.     The Threat Assessment Report

88.     On November 24, 2021, recognizing that there could not have possibly have been a deliberate "threat assessment" process beyond a mere superficial review that only considered the Formal Complaint, counsel for David Smith wrote to Michael D. Grabo, Associate General Counsel for Brown, to request a copy of the initial report generated by the Threat Assessment Team.

89.     In response, David Smith was directed to submit a request to Dean Koren Bakkegard, Associate Vice President of Campus Life and Dean of Students, "to review his education records," which would contain the threat assessment.

90.     For the next two weeks, between approximately November 24 and December 16, 2021, David Smith scrambled to arrange permission from his professors to complete the remainder of the semester remotely, pursuant to Vice President Estes's temporary modification of the interim suspension. During this time, David Smith diligently focused on securing adequate access to course materials, studying, and being able to prepare for and take his end-of-semester exams.

91.     On December 10, 2021, Dean Bakkegard informed David Smith that the Threat Assessment Team had reviewed his submission of additional information yet recommended that the interim suspension remain in effect.

92.     On December 13, 2021, David Smith submitted a request to Dean Bakkegard for a copy of his educational records that related to the Threat Assessment Team's decision regarding his interim suspension.

93.     Brown did not honor David Smith's request for a copy of those records. However, Brown afforded David Smith the opportunity to review them online but not to take any pictures, screenshots, or recordings of the notes. David Smith had to take notes from the records and effectively re-write them word for word as they appeared.

94.     David Smith, with an adviser, reviewed the Threat Assessment Team's records on December 17, 2021, and took copious notes.

95.     David Smith's review of the Threat Assessment Team's records revealed that the Threat Assessment Team relied on nothing more than Jane Roe's Formal Complaint to support its determination that David Smith constituted a continuing or significant threat to her and the campus community. Notably, the Threat Assessment Team records note that the "student detailed bruises, bleeding earrings holes, hair pulled out." However, the Threat Assessment Team records cited absolutely nothing to support that such injuries in fact occurred.

96.     Of course, the Threat Assessment Team records contained no information, prior history, or evidence indicating that David Smith was likely to engage in sexual misconduct or that he posed a threat of any kind, much less a "significant" threat, to anyone. In fact, the records expressly noted the fact that David Smith had never been accused of, found responsible for, or even been associated with any prior conduct that suggests he might be a safety risk to anyone. The Threat Assessment Team acknowledged that there was no historical pattern of disciplinary problems or threats, no evidence of violence, no evidence of weapons, and no evidence of anything other than the Formal Complaint itself.

97.     The lack of any evidence suggesting that David Smith is a threat is not surprising, since David Smith has never been in trouble for anything in his life and, as one Brown administrator noted, David Smith would be the last person to ever get into trouble.

98.     The Threat Assessment Team materials also revealed that the team responsible for determining whether David Smith was a "significant threat" entirely ignored substantial evidence available to it that entirely discredited the Formal Complaint and demonstrated that David Smith was not a threat to anyone, especially Jane Roe. Specifically, the Threat Assessment Team ignored evidence showing that: (1) Jane Roe was engaging in an active and healthy social life immediately following the alleged incident; (2) Jane Roe sought out David Smith following the incident (contrary to the purpose of the No-Contact Order that was issued), including by attending a subsequent last-minute gathering at his residence where she remained for several hours and by messaging him to meet in person; and (3) there are pictures of Jane Roe that do not show any sign of injuries as a result of the alleged incident on the October 29–30, 2021 weekend. The Threat Assessment Team's analysis did not evidence any consideration of any of this objective evidence that directly countered Jane Roe's allegations, or that they gave any weight to David Smith's narrative Response containing his account of his encounter with Jane Roe.

99.     The only way that the Threat Assessment Team could have recommended ongoing suspension was by accepting the wholly fantastic, internally flawed, and unsupported one-and-a-quarter-page Formal Complaint in its entirety and by completely rejecting the logical and factual, five-page Response and six pages of counter-evidence.

100.    The Threat Assessment Team did not interview either David Smith or reflect having interviewed Jane Roe. Nor did the Threat Assessment Team wait to obtain notes by Brown's sexual misconduct investigator following her interviews with the parties. Such interviews had not yet

even been scheduled at the time the Threat Assessment Team made its determination, as Brown had not yet formally engaged an investigator.

I.      The Threat Assessment Team's Mistakes

101.    Moreover, the Threat Assessment Team's materials revealed that the team made several factual mistakes in its consideration of the evidence. The team noted that David Smith and Jane Roe see each other "frequently." That is not true and has never been true. Jane Roe's Formal Complaint notes that she met David Smith for the first time on the night of the alleged incident. David Smith and Jane Roe do not share the same major and do not attend the same classes. The Threat Assessment Team failed to list any facts supporting its finding that they see each other "frequently," and no such facts exist.

102.    Additionally, the Threat Assessment Team's materials noted that Jane Roe was under the influence of "excessive" alcohol or drugs the night of the alleged incident. The Threat Assessment Team cited no facts to support that conclusion, and it is directly contradicted by Jane Roe's own Formal Complaint, in which she stated that she "was drunk but aware of [her] surroundings."

103.    Many of Brown's staff and faculty in its Title IX Office, including its Program Director, are serving "interim" positions or are newly-installed in their positions. Lack of experience may partially explain Brown's utter failure with respect to the Threat Assessment Team's determination and Brown's implementation thereof.

J.      David Smith's Appeal

104.    Per Dean Bakkegard's December 10, 2021, ruling, on December 20, 2021, David Smith submitted a formal appeal of his interim suspension to Vice President Estes, in order to correct these myriad deficiencies and seek a reversal of the decision to continue the interim

suspension into the upcoming Spring semester. A virtual follow-up call was held on December 22, 2021.

105.    After repeated follow-up messages from David Smith's counsel to Brown's counsel, on January 7, 2022—the day the interim suspension resumed—Vice President Estes finally issued a decision concluding simply: "Based upon my review of the record and consideration of your appeal, I have decided to uphold the interim suspension that began on January 7, 2022 and will remain in effect pending the resolution of the Formal Complaint by the Title IX Office." The decision included no facts supporting the decision, no mention of the copious materials that David Smith submitted in response, and in fact referred David Smith to the wrong "continued support person" (referring him to Dean Ashton Darrett, as opposed to Dean Christopher Lujan, to whom David Smith had previously been referred). The flippancy of Vice President Estes's appeal decision indicated that the appeal was just another sham.

106.    Brown, through its complaint investigator, has also informed David Smith that he is prohibited from contacting potential witnesses that may vouch for him and his account of events. None of Brown's policies or procedures prohibit the respondent to a sexual misconduct complaint from contacting potential witnesses.

K.    <u>Brown's Unreasonable Position is a Response to Significant Campus Activism</u>

107.    Brown's unreasonable position of imposing immediate suspensions against any male, like David, accused of sexual assault is a tacit response to the fact that it is facing extreme pressure and scrutiny regarding its handling of sexual assault accusations within the university community, including by media articles, vocal campus organizations, social media groups, and in litigation including class action litigation.

108.    For example, in April 2021, student activists launched a week-long series of campus protests, which included hanging thousands of posters on campus criticizing the University for its purported failure to address sexual violence on campus.[3]

109.    Students and alumni have formed a task force to continually put pressure on campus administrators to clamp down on what they believe to be systemic failure to address a purported culture of sexual violence on campus.[4]

110.    At Brown, there is a history of protests and litigation when male students are found not responsible for sexual misconduct allegations, as occurred in 2014 when a male who was accused of spiking a female student's drink at a party was found not responsible.[5]

111.    Similarly, in 2016 when a male accused student had the audacity to challenge Brown's disciplinary procedures in court, student activists organized a letter writing campaign directed to the judge presiding over the case to try to influence the result.[6]

112.    Students and alumni have formed multiple groups on social media networks, with thousands of members, to place constant and continuous pressure on Brown to take a hard stance against sexual violence on campus.  For example, the Instagram group "Voices of Brown," with more than 3,600 followers and more than 180 posts, is a community organization that asks for anonymous posts by Brown students to share their stories of sexual assault.  Nearly all of the posts

---

[3]    *See*        https://www.browndailyherald.com/article/2021/04/end-sexual-violence-at-brown-launches-week-of-protest-with-poster-campaign

[4]    *See*    *https://www.browndailyherald.com/article/2014/04/u-mishandled-sexual-assault-case-victim-says/*;    *https://www.browndailyherald.com/article/2021/04/it-happens-in-the-places-where-we-live-and-sleep-students-fight-for-sexual-assault-resources-on-campus*

[5]    *See* https://www.cbsnews.com/news/ex-student-brown-university-protected-trustees-son-in-frat-party-drugging-case/; https://www.huffpost.com/entry/brown-sexual-assault-protest_n_6859486;

[6]    *See*    *https://thetab.com/us/brown/2016/09/01/why-we-need-to-stop-the-student-convicted-of-sexual-assault-coming-back-to-brown-3077*;   *see also*   https://www.wsj.com/articles/brown-university-student-found-responsible-of-sexual-misconduct-by-school-panel-allowed-back-on-campus-for-fall-1472831359

describe purported acts of sexual violence by men.  Similarly, the Instagram Group "End Sexual Violence @ Brown" is "coalition of students and student-run organizations" boasting more than 2,300 followers, which takes particular aim at male fraternities as a source of sexual violence on campus.

113.    Brown is currently in the midst of a search for a new Title IX Coordinator and is facing pressure from student activists to appoint someone who will make "fundamental structural changes" because "the University is not treating this issue [sexual assault] with the scale that it needs to be treated."[7]

114.    The wave of campus activism reached a crescendo in August of 2021—three months before the incident that Jane Roe alleges—when current and former female Brown students filed a class action lawsuit alleging that they were victims of sexual assault caused in part by Brown's systemic failures to address sexual violence on campus.[8] This action remains pending as of the filing of this complaint.

115.    Brown's rushed and unchecked suspension of David Smith is neither a fair nor a reasonable response to the criticism it is facing. Although the external pressures on Brown warrant the university examining its policies and procedures to ensure better protection for actual victims of sexual assault, those pressures do not warrant throwing the book in the harshest manner possible at a male student who, by any reasonable assessment, poses no threat to the continued health and safety of Jane Roe or the university community. Before an unduly punitive interim suspension may be imposed prior to a final administrative adjudication, all possible alternatives (such as no-contact orders, schedule adjustments, or curfews) should be explored. Brown failed to do so, rushed to

---

[7]    https://www.browndailyherald.com/article/2021/11/search-for-new-university-title-ix-coordinator-underway

[8]    *Soenen, et al., v. Brown University*, Case No. 1:21-cv-00325-JJM-PAS (D.R.I.).

judgment, and in so doing jeopardizes the academic, athletic, and professional future of David Smith. Brown's suspend-first-ask-questions-later approach here is emblematic of recent changes the school has made to minimize any due process protections available to accused students, and likely a response to the mounting pressures noted above.

116.    For example, after the Department of Education formally amended its Title IX regulations in 2020 to ensure colleges and universities were ensuring procedural fairness, Brown enacted a separate sexual misconduct policy specifically designed to skirt federal regulatory requirements whenever the University can justify eschewing compliance with Title IX.  In this way Brown currently maintains two separate but unequal procedures for handling student sexual misconduct cases. The Non-Title IX policy dramatically diminishes the rights of accused students to a fair process.

117.    As set forth in more detail below, Brown has opted, over David's objection, to adjudicate his sexual misconduct case under the almost identical but decidedly biased and unfair (against the accused party) Non-Title IX Policy.

L.    Brown's Erroneous Policy Application

118.    Brown has evidenced its intent to treat David Smith in the harshest manner possible, regardless of the protections afforded by its own policies and procedure, including a presumption of innocence (Title IX Procedure § 1.0; Non-Title IX Procedure § 1.0), and regardless of whether David Smith actually committed the conduct of which he is accused, which the objective evidence shows that he did not.

119.    Brown's intent is evidence by the fact that, during an interview with Brown's investigator, David Smith was informed that he was not allowed to contact any potential witnesses.

This is despite the fact that neither Brown's Title IX Policy nor Non-Title IX Policy contain a prohibition on the respondent contacting potential witnesses.

120.    Brown's intent is further evidenced by its stated intention to adjudicate the Formal Complaint against David Smith under Brown's *Non*-Title IX Policy and *Non*-Title IX Procedure. These policies and procedures do not comply with the requirements and strictures of Title IX of the Education Amendments of 1972 and its implementing regulations. For instance, the Non-Title IX Policy and Non-Title IX Procedure do not afford the accused with any right of cross-examination or confrontation of witnesses, including the accuser.

121.    Brown maintains *separate* policies and procedures that *do comply* with Title IX of the Education Amendments of 1972: a "Gender-based Harassment, Sexual Assault, Intimate Partner Violence, and Stalking Policy" (hereafter, the "Title IX Policy") (**Exhibit C**) and a "Title IX Grievance Procedure" (hereafter, the "Title IX Procedure") (**Exhibit D**). These procedures comply with Title IX by, for example, providing for "cross-examination" during which the complainant and respondent may pose questions, through an advisor, "to the other party, investigator, and witnesses to elicit relevant factual information missing from the final investigation report." Title IX Procedure § 2.9.4.4.

122.    Brown refuses to apply the Title IX Policy, even though that policy, by its clear and express terms, applies to the Formal Complaint.

123.    Brown's Title IX Policy "applies broadly to the entire Brown University . . . community" when "Prohibited Conduct" (including sexual assault) occurs off-campus "in the context of a program, activity, or location in which Brown exercises substantial control over both the Respondent and the context in which the alleged Prohibited Conduct occurred." Title IX Policy § 2.0.

124.    The Title IX Policy applies to the alleged incident at David Smith's residence on

October 29–30, 2021, because Brown "exercises substantial control" over both David Smith and

the context of the activity or location at which the alleged incident occurred. David Smith is a

Brown student, subject to all applicable student handbooks, policies, and procedures of Brown,

and he is subject to discipline by Brown. Moreover, the October 29–30, 2021 party was held at a

residence that sits on the perimeter of Brown's campus and is inhabited exclusively by Brown

students, and is within the jurisdiction of the Brown University Police. Brown University Police

Officers are "qualified employees" of Brown whose employment Brown has discretion to

terminate. 12 R.I. Gen. Laws Ann. § 12-2.1-1.

125.    Indeed, on the night in question, officers from the Brown University Police were

dispatched to the party at the residence to investigate a noise complaint from neighbors. Brown

University Police Officers arrived within one hour of the time that Jane Roe alleged that she was

assaulted (12:30 a.m.), and the officers asked the residents of the house, including David Smith,

to break up the party and to send their guests home. Later, Brown decided to discipline most of the

residents for holding this party. Specifically, on December 1, 2021, following individual hearings

with a Dean at Brown, David Smith and most of the other residents were found responsible by

Brown for "Disruption of the Community" in connection with the noise complaint on October 30,

2021. The residents were sanctioned by Brown, placed on probation, required to write individual

letters of apology, and to engage in certain educational activities. On additional occasions, such as

Parents' Weekend, Brown also disciplined David Smith and his housemates for having messy trash

and excessive noise and disruption at their residence.

126.    The fact that Brown has the authority to send university-employed police officers

to a party at David Smith's residence, which sits on the edge of Brown's campus, to investigate

David Smith's and his housemates' conduct there, ask him to remove guests from a party at his home, and to discipline David Smith and his co-residents for a noise and trash infractions, demonstrates that the alleged incident occurred at a "program, activity, or location in which Brown exercises substantial control over" David Smith and the context in which the alleged incident occurred.

127.    On December 8, 2021, David Smith emailed Interim Title IX Program Officer Horton questioning Brown's refusal to apply the Title IX Policy to the Formal Complaint.

128.    On December 14, 2021, Interim Title IX Program Officer Horton responded that Brown would not apply its Title IX Policy to the Formal Complaint. She concluded simply that Brown did not exercise substantial control "over the private off-campus residence" or the Halloween party that occurred there, because the residence "is not owned, managed, or leased by the University" and the party "was not sponsored by the University." She failed to assess or respond to the fact that Brown University Police Officers were dispatched to and arrived at that party, asked to break up the party and send guests home, and that Brown disciplined most of the residents for throwing that party. She failed to assess the "context in which" the alleged incident occurred (a party adjacent to campus, to which Brown University Police Officers responded, and for which most residents were disciplined by Brown), instead erroneously focusing on simply the building at which it occurred.

129.    Brown unilaterally decided to maintain two sets of sexual misconduct policies and procedures (Title IX and Non-Title IX) in order to minimize protections for students, like David Smith, who are accused of sexual misconduct. Brown's decision to apply the Non-Title IX Policy to him, despite facts showing that the Title IX Policy clearly applies, evidences its intent to

disadvantage him, deprive him of a fair process, and treat him as harshly as possible in light of Jane Roe's yet-unproven accusations.

## COUNT I
## Breach of Contract

130.     David Smith repeats and re-avers each and every paragraph above as if fully set forth herein.

131.     In order to assure compliance with legal standards and to ensure students' acceptable behavior, Brown maintains a variety of school policies and procedures, including the Title IX Policy, Title IX Procedure, Non-Title IX Policy, and Non-Title IX Procedure.

132.     Pursuant to Rhode Island law, these policies and procedures form the basis of a contractual relationship between Brown and David Smith.

133.     A contract exists between Brown and David Smith, requiring that Brown:[9]

   a.     Afford David Smith a "presume[ption] that [he] is not responsible for the alleged Prohibited conduct until a determination is made at the conclusion of this procedure," Title IX Procedure § 1.0; Non-Title IX Procedure § 1.0;

   b.     Not impose any "Interim Action" against a student accused of sexual misconduct unless such measures are "both restorative (designed to address a Complainant's safety and well-being and continued access to educational opportunities) and remedial (involving action against a Respondent without unreasonably burdening a Respondent.)," Title IX Policy § 4.0; Non-Title IX Policy § 4.0; and

   c.     Not impose any "Emergency Removal" unless Brown's Threat Assessment Team first identifies "reasonable cause to believe that the Prohibited Conduct is likely to continue and/or the Respondent poses a significant threat of harm to the health, safety, and welfare of others or the University community," Title IX Policy § 4.0; Non-Title IX Policy § 4.0.

134.     Brown failed to afford David Smith each of these contractual rights.

---

[9]     The provisions of the policies and procedures discussed in this paragraph do not differ between the Title IX and Non-Title IX versions of the policies and procedures. Therefore, regardless of which version of the policies and procedures apply, Brown's contractual obligations are identical.

135.    Brown failed to afford David Smith his contractual right to be presumed "not responsible" for the conduct alleged by Jane Roe, because Brown removed David Smith from campus and suspended him before performing an investigation of Jane Roe's allegations—despite the fact that the Formal Complaint on its face contains flawed and questionable accusations that give reason to question the validity of the Formal Complaint in its entirety—and before even entertaining David Smith's response.

136.    Rather than presuming that David Smith was "not responsible," it applied a diametrically opposite presumption by accepting Jane Roe's allegations purely at face value and without considering substantial evidence disproving those allegations and demonstrating that David Smith poses no threat to anyone at Brown.

137.    Brown violated its contract with David Smith because the interim suspension is not "restorative" and "remedial" within the meaning of those terms under Brown's policies and procedures.

138.    The interim suspension is not "restorative" because it is absolutely unnecessary to ensure Jane Roe's safety, well-being, and continued access to educational opportunities. The interim suspension fails to take into account that David Smith and Jane Roe had never met prior to the alleged incident, do not attend the same classes, and do not come into unavoidable contact. No evidence exists to show that the interim suspension is necessary for Jane Roe's safety, well-being, or access to educational opportunities.

139.    The interim suspension is not "remedial" because it is unnecessary against David Smith and, moreover, is substantially and unreasonably burdensome to him.

140.    Brown violated its contract with David Smith because the Threat Assessment Team failed to conduct a reasonable and even-handed investigation to determine whether "reasonable cause" existed.

141.    Brown violated its contract with David Smith because it imposed an interim suspension on him without any "reasonable cause" to believe that the conduct alleged would continue or that he posed a "significant threat" of harm to anyone.

142.    No-Contact Orders or other means of restricting interactions between David Smith and Jane Roe (such as schedule adjustments or curfews) are less onerous alternatives and available at Brown's disposal. A No-Contact Order is already in place, David Smith has abided by it, and there is no evidence that it is inadequate.

143.    David Smith's removal from campus and interim suspension will cause him irreparable harm, including, inter alia: an interruption to David Smith's education; a delay to his graduation date; the loss of a hard-earned and meaningful summer 2022 job; the loss of practice, training, and competition in athletics; the loss of his position as a leader of a campus organization; and reputational destruction.

144.    By denying David Smith his right to be presumed not responsible, imposing an Interim Action that was not restorative and remedial within the meaning of its policies and procedures, and imposing an interim suspension against David Smith without adequate investigation and without reasonable cause, Brown breached its contract with him, breached the guarantees of due process and fundamental fairness, and breached the implied covenant of good faith and fair dealing.

145.    As a direct and foreseeable consequence of these breaches, David Smith has sustained damages.

## COUNT II
## Injunctive Relief

146.    David Smith repeats and re-avers each and every paragraph above as if fully set forth herein.

147.    By virtue of Brown's violation of David Smith's contractual rights, David Smith has suffered immediate and irreparable harm for which money damages alone are inadequate.

148.    To address that harm, David Smith is entitled to injunctive relief from this Court ordering Brown to reverse the interim suspension and allow David Smith to resume university activities, including attending classes and athletic practices, training, and events, under the existing No-Contact Order or other appropriately-tailored measures to ensure separation between David Smith and Jane Roe.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, David Smith demands the following relief from Defendant Brown University:

a.    An award of compensatory damages in an amount exceeding $75,000 to be determined at trial;

b.    The issuance of an injunction ordering Brown to reverse the interim suspension and allow David Smith to resume university activities, including attending classes and athletic training and events, under the existing No-Contact Order or other appropriately-tailored measures to ensure separation between David Smith and Jane Roe;

c.    An award of the costs and expenses of suit;

d.    Attorneys' fees; and

e.    Such other and further relief as the Court deems just, equitable, and proper.

## JURY DEMAND

Plaintiff David Smith demands a trial by jury on all issues so triable.

**VERIFICATION**

The undersigned hereby swears under pains and penalties of perjury that the facts stated herein are true and accurate to the best of his knowledge.

*David Smith*

David Smith

Dated: January 14, 2022

Plaintiff, David Smith,
by and through his attorneys,

/s/ Maria F. Deaton
Maria F. Deaton, Esq. (#7286)
Lynch & Pine, Attorneys at Law
One Park Row, Fifth Floor
Providence, RI 02903
(401) 274-3306
mdeaton@lynchpine.com

and

/s/ Patrick C. Lynch
Patrick C. Lynch, Esq. (#4867)
Lynch & Pine, Attorneys at Law
One Park Row, Fifth Floor
Providence, RI 02903
(401) 274-3306
plynch@lynchpine.com